UNITED STATES BANKRUPTCY COURT
for the
DISTRICT OF MASSACHUSETTS

=======================================
                                        *
                                        *
In Re:                                  *
                                        *  Chapter 7
    CHRISTIAN A. SODERSTROM.            *  No. 04-15345-WCH
                                        *
                   Debtor       *
                                        *
=======================================
                                        *
                                        *
    DONALD R. LASSMAN, CHAPTER 7        *
    TRUSTEE,                             *  Adversary Proc.
                  Plaintiff    *  No. 05-01591
                                        *
            vs.                        *
                                        *
                                        *
    ROLF SODERSTROM,                     *
                                        *
               Defendant         *
                                        *
=======================================

MEMORANDUM OF DECISION

*Introduction*

Donald R. Lassman, Chapter 7 Trustee (the "Trustee") of the estate of Christian A. Soderstrom ("Christian"), brought this adversary proceeding against Rolf Soderstrom ("Rolf"), Christian's father, seeking to avoid an alleged fraudulent transfer by means of a mortgage granted by Christian to Rolf and to recover the value of the transfer or preserve the lien for the benefit of the estate. On February 11, 2008, I conducted a trial at which three witnesses testified and twenty-three exhibits were accepted into evidence. At its conclusion, I took the matter under advisement. Both parties filed post-trial memoranda. For the reasons set forth below, I will enter judgment in favor the Trustee.

1

*Findings of Fact*

In April, 1998, Christian began residing at real estate located at 841 Main Street - Route 6A, Dennis, Massachusetts (the "Property") pursuant to a lease-to-own agreement.[1] The lease provided for a twenty-four month term with an option to purchase for $150,000 at the end of the term.[2] Additionally, a portion of each month's rent was applied towards the purchase price.[3] In January, 2000, the Debtor lacked sufficient funds to exercise the purchase option and was unable to obtain financing due to his personal finances being wrapped up in a business venture.[4] On January 6, 2000, Rolf provided $136,612 towards the purchase price of the Property.[5] Unlike Rolf's subsequent loans made to the business as described below, no documents were prepared to evidence this transaction.[6] Christian testified that the funds were a "family loan," and "that [he] was to pay him back at a later date."[7] His father agreed with that interpretation.[8] Rolf testified that he did not take a mortgage on the Property at this time because it was his expectation that Christian would obtain a mortgage from a bank and pay him back.[9]

---

[1] Transcript of Hearing, February 11, 2008 ("T-"), T-13, L20-25.

[2] T-15, L18-25; T-16, L1-18.

[3] *Id.*

[4] T-18, L1-13.

[5] Joint Pretrial Statement, Docket No. 32 ("PTS") ¶ 2c.

[6] *Ibid*; T-23, L6-9.

[7] T-22. L14-21.

[8] T-33, L16-23.

[9] T-33, L24-25; T-34, L1-14.

Christian owned Southbank, Inc. ("Southbank"), which operated a restaurant known as Contrast on the Commons in Mashpee, Massachusetts.[10] As the principal of Southbank, Christian also guaranteed its debts to several vendors and its landlord, Mashpee Commons.[11] In June, 2000, Southbank borrowed $128,400 from Rolf.[12] Rolf, having substantial business experience,[13] prepared a loan agreement (the "2000 Loan Agreement") in connection with that transaction.[14] It was executed by Christian as president of Southbank and provided that "repayment of this loan is to commence when Contrast has achieved a sustainable profit level of business."[15]

On December 11, 2000, Christian obtained an equity credit line from Rockland Trust Company ("Rockland Trust") in the amount of $90,000 in exchange for executing a mortgage on the Property.[16] Of the $90,000, only $10,000 was paid to Rolf while the balance went to Mashpee Commons and towards the purchase of a car.[17] Christian refinanced the Property on February 13, 2001, and again on December 16, 2002, for $115,000 and $200,000 respectively.[18] Notwithstanding the repeated refinancing of the

---

[10] PTS ¶ 2e.

[11] T-5, L7-12.

[12] PTS ¶ 2s.

[13] T-25, L20-25; T-36, L1-14.

[14] PTS ¶ 2s; Plaintiff Ex. 9.

[15] Plaintiff Ex. 9.

[16] Plaintiff Ex. 12.

[17] T-11, L2-13; T-34, L4-14.

[18] Plaintiff Ex. 13-14.

Property, no further payments were made to Rolf.[19] Additionally, Christian did not list any indebtedness to Rolf on the financial statements when he applied for the refinancing loans.[20]

By the fall of 2002, Southbank was in financial distress and falling behind on its obligations to creditors.[21] In particular, Southbank owed substantial liabilities for sales and withholding taxes to the Massachusetts Department of Revenue (the "MDOR") for which Christian was personally liable.

In March, 2003, the MDOR threatened to close down the restaurant unless it received payment on account of its assessment, which was in excess of $175,000.[22] At this time, Southbank borrowed an additional $60,000.00 from Rolf and others.[23] This loan agreement (the "2003 Loan Agreement"), also prepared by Rolf, provided, *inter alia*, that "a best effort will be made by Christian Soderstrom to convert his current home equity loan to a permanent mortgage with any cash difference to be applied to the loan repayment."[24]

On May 15, 2003, Christian was sued by Cape Cod Five Cent Savings Bank ("Cape

---

[19] T-11, L19-25; T-12, L1-2.

[20] T-12, L3-6. I note that Rolf also testified that when he borrowed money for his own purposes during this period, he did not disclose any loans to either Southbank or Christian either. T-29. L12-22.

[21] T-5, L13-15.

[22] PTS ¶ 2f; T-5, L24-25; T-6, L1-2; T-30, L20-25.

[23] The PTS indicates that only $50,000 was advanced. PTS ¶ 2t. The loan agreement, Plaintiff Ex. 8, recites $60,000, but the difference is not relevant to the determination of this matter.

[24] PTS ¶ 2u; Plaintiff Ex. 8, ¶ 5.

4

Cod Five") to recover $20,000.[25] On June 10, 2003, Cape Cod Five received an attachment in the in the amount of $22,000 against the Property.[26] Also during June, 2003, Cape Cod Bank & Trust Company ("CCB&T") made a demand on Christian for repayment of a loan in the amount of $41,165.88, which had been made to Christian and guaranteed by Rolf.[27]

Shortly thereafter, Christian entered an alcoholic treatment facility in Hazelton, Minnesota.[28] While there, he executed a mortgage on the Property in favor of Rolf on June 18, 2003, which was recorded the Barnstable Registry of Deeds on June 19, 2003 ("the Mortgage").[29] No note was executed and no funds were transferred as a result of the Mortgage transaction.[30] Rolf testified that he thought the Mortgage would have no value, given the amount of senior liens on the Property.[31] The parties have stipulated that at the time the Mortgage was granted, Christian was insolvent and the Property was his only substantial asset.[32]

The restaurant closed while Christian was in Minnesota.[33] No payments were ever

---

[25] PTS § 2i

[26] PTS ¶ 2j; Plaintiff Ex. 5.

[27] PTS ¶ 2k; Plaintiff Ex. 3.

[28] PTS ¶ 2*l*.

[29] PTS ¶¶ 2*l*, m; Plaintiff Ex. 1.

[30] PTS ¶¶ 2n, o.

[31] T-35, L3-15.

[32] PTS ¶¶ 2p, q.

[33] T-9, L19-21.

made on account of either the 2000 Loan Agreement or 2003 Loan Agreement.[34]

Christian filed his bankruptcy case on June 24, 2004.[35] At that time, the Property had a value of at least $580,000, and the Mortgage had a value of $130,000. Additionally, unsecured creditors holding claims that arose before the Mortgage was granted existed.[36] On July 8, 2003, the MDOR filed liens against the Property totaling $204,851.64 for unpaid tax liabilities.[37] On Schedule C - Property Claimed as Exempt, Christian listed an exemption in the Property in the amount of $300,000 pursuant to Mass. Gen. Laws ch. 188, § 1.[38] On Schedule D - Creditors Holding Secured Claims, Christian listed the following claims with respect to the Property:

| | |
|---|---|
| Cape Cod Five Cents Savings Bank (Real Estate Attachment) | $21,708 |
| Division of Employment & Training (Tax Lien) | $17,952 |
| Dole & Bailey, Inc. (Real Estate Attachment) | $15,765 |
| MDOR (Tax Lien) | $247,251 |
| Ralph Soderstom [sic] (Second Mortgage) | $130,000 |
| Rockland Trust (First Mortgage)[39] | $199,932 |

On December 1, 2004, the MDOR filed an amended proof of claim indicating that it held

---

[34] PTS ¶ 2v.

[35] PTS ¶ 2a.

[36] PTS ¶ 2y.

[37] PTS ¶¶ 2f,g; Plaintiff Ex. 10-11.

[38] Plaintiff Ex. 2.

[39] *Id.*

a secured claim in the amount of $175,716.62 and an unsecured claim in the amount of $55,435.20.[40]

The Trustee filed the present adversary proceeding on November 7, 2005.

*Positions of the Parties*

The Trustee seeks to avoid the Mortgage under the Massachusetts law. His first contention, pursuant to 11 U.S.C. § 544,[41] is that the Mortgage was granted with the intent to "hinder, delay, and defraud creditors,"[42] which would make it avoidable under § 5 of the Massachusetts Uniform Fraudulent Transfer Act (the "Massachusetts UFTA Statute").[43] As a alternative theory, he argues that the Mortgage is avoidable under § 6 of the Massachusetts UFTA Statute because Christian did not receive reasonably equivalent value for the Mortgage and was insolvent at the time it was granted.[44] He seeks to recover the value of the Mortgage under § 550 of the Bankruptcy Code or alternatively, under § 551 of the Code, to preserve the Mortgage for the benefit of the estate.

Rolf contends that the Mortgage was granted for good and valid consideration, although recorded to secure an antecedent debt. He denies that the elements of § 5 of the Massachusetts UFTA Statute are present. He further asserts that since Christian claims

---

[40] PTS ¶ 2h; Plaintiff Ex. 6.

[41] References to "the Bankruptcy Code" or "the Code" are to 11 U.S.C. §§ 101 *et seq.*

[42] Thus in Trustee's brief. The statute actually says "hinder, delay, *or* defraud". Mass. Gen. Laws ch. 109A § 5(a)(1), and it does make a difference. *See In re Gould*, 348 B.R. 78 (Bankr. D. Mass. 2006).

[43] Mass. Gen. Laws ch. 109A, § 5.

[44] Mass. Gen. Laws ch. 109A, § 6.

7

a homestead exemption in the property, it is not property of the estate and thus the mortgage cannot be preserved for the benefit of the estate. He also points out that if the Trustee were to recover the value of the Mortgage it would result in a windfall to unsecured creditors.

*Discussion and Conclusions of Law*

*The existence of a fraudulent transfer*

Section 544(b) of the Code authorizes the trustee to avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim.[45] The applicable law invoked by the Trustee is the Massachusetts UFTA Statute.[46] That statute makes a transfer fraudulent if it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor."[47] To determine actual intent under that provision, the statute incorporates the current version of the ancient "Badges of Fraud":

> (b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the

---

[45] 11 U.S.C. § 544(b)(1).

[46] Mass. Gen. Laws ch. 109A.

[47] *Id.*, § 5(a)(1).

transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[48]

Christian admits that there was in fact a transfer to an insider at a time when he was insolvent and had been threatened with suit. He denies that any of the other elements were present. I must disagree with this interpretation in one respect.

When one considers the encumbrances on the property other than the Mortgage, there was not substantial value left. Looking to Christian's Schedule D, we find these liens other than the Mortgage:

| | |
|---|---|
| Rockland Trust mortgage | $199,932.00 |
| MDOR lien | 175,716.62[49] |
| Cape Cod Five attachment | 21,708.00 |
| Mass. Div. of Employment & Training lien | 17,752.00 |
| Dole & Bailey, Inc. attachment | 15,765.00 |
| | $430,873.62 |

Subtracting this total from the stipulated value of the property ($580,000.00) leaves only $149,126.38 in equity. The mortgage was in the face amount of $130,000.00. The parties stipulated that the Property was Christian's only significant asset and I find that in granting the Mortgage, he parted with substantially all of his assets. This adds another Badge of Fraud to the collection. As the United States Court of Appeals for the First Circuit has noted, "The presence of a single badge of fraud may spur mere suspicion . . .; the confluence of several can constitute conclusive evidence of an actual intent to defraud,

---

[48] Mass. Gen. Laws ch. 109A, §5(b).

[49] This is the value indicated on the MDOR's amended proof of claim.

absent "significantly clear" evidence of a legitimate supervening purpose."[50]

There is no supervening purpose here, and I find that the elements present constitute adequate proof of the requisite fraudulent intent. I hold that the granting of the Mortgage was fraudulent under § 5 of the Massachusetts UFTA Statute.

Having so held, it is not necessary to address the Trustee's arguments under § 6 of the Massachusetts UFTA Statute.

*The available remedies*

Rolf makes a variety of arguments against the Trustee's ability to preserve the Mortgage for the benefit of the estate. The most seriously stressed is that Christian claimed a homestead exemption in the Property; that there was no objection to that claim; and as a result the Property is no longer property of the estate and the Mortgage cannot be preserved as preservation is authorized "only with respect to property of the estate."[51] This argument must fail.

Rolf agrees that Christian cannot claim an exemption in the avoided Mortgage as it was a voluntary transfer.[52] As a result, the Mortgage, or its value, is property of the

---

[50] *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254-55 (1st Cir. 1991).

[51] 11 U.S.C. § 551.

[52] "Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--

　　(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
　　　　(B) the debtor did not conceal such property; or
　　(2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this

estate. "Certainly if there is any equity in an asset after deducting the liens and the exemption, it remains property of the estate."[53] This case is slightly more complex but the end result is the same; there is value in an asset which is property of the estate and to which no exemption will apply. As such, the Property remains property of the estate.

The Trustee's rights are to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."[54] It would appear to be the Trustee's position that what was transferred to Rolf was the equivalent of cash, and Rolf should be ordered to pay that amount to him. I am uncomfortable with that reading. Even given the value of the various liens as recited above, I do not find that Rolf received a cash equivalent transfer. He himself questioned the value of the mortgage,[55] and I share his doubts. What Rolf received was a lien, probably in third position, on the Property. It is that lien position that should be returned.

Rolf's other arguments fail given my conclusions as stated above.

---

section."
    11 U.S.C. § 522(g).

[53] *In re McCabe*, 356 B.R. 314, 316 (Bankr. D. Mass. 2006).

[54] 11 U.S.C. § 550(a).

[55] T-35, L3-15.

11

*Conclusion*

In light of the foregoing, I will enter judgment in favor of the Trustee on Count I of the Complaint and direct Rolf to execute and deliver to the Trustee an assignment of the Mortgage. The assignment shall be completed not more than twenty days after the order is final.

*[signature]*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: April 14, 2008